JAMES WALLACE, APPELLANT, V. PHILIP KRUZER, APPELLEE.

FILED APRIL 3, 1914.    No. 17,671.

1. Action: ENFORCEMENT OF RIGHTS. The law affords a legal remedy for the protection of every right and the redress of every wrong. The enforcement of a legal right should be sought through the application to legal and peaceable procedure, and not by physical force or stealth.

2. Injunction: PROTECTION OF PROPERTY RIGHTS. E. sold a small tract of land to W. In the deed of conveyance it was stipulated that a certain fence, situated upon the land of the grantor, a short distance outside of the boundary of the land conveyed, should "stand at present where it now is, until otherwise provided for." W.'s deed was duly recorded. Some years later E. sold and conveyed the remainder of his land to K., the deed referring to the book and page of the county records where W.'s deed was recorded. *Held*, First, that, under the contract with E., W. had the right to maintain the fence where it then stood until the right was terminated by lawful means, and that, until such time, he was not a trespasser; second, that, until the termination of W.'s rights, K. had neither right nor authority to destroy the fence located and established by the contract between E. and W., and that W. was entitled to an injunction restraining such destruction so long as his rights were not terminated by legal and peaceful methods.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed with directions.*

*H. M. Sinclair,* for appellant.

*F. E. Beeman, contra.*

REESE, C. J.

This is an action for an injunction to restrain defendant from cutting down and destroying a certain fence, in part inclosing plaintiff's property used as a hog lot. Plaintiff owns the land adjoining the land of one Evey on the west. Running through Evey's land and close to the east line of plaintiff's land is a drain, or what is termed by some a "dry creek," with a well-defined channel, and which, during the dry season, contains little, if any, water, but at

other seasons carries water, and during the rainy season, or from heavy rains, becomes quite a torrent, as said by one witness, deep enough to swim a horse. Some time in the year 1903 plaintiff purchased one-half acre from Evey, consisting of a narrow strip of land, including within its boundaries the bed of the stream referred to, from the north line of plaintiff's land to a point on the south line of Evey's land, the strip purchased being apparently about 336 feet in length, the southern extremity thereof being on the north line of another tract owned by plaintiff. Between the time of the purchase and the execution of the deed to plaintiff by Evey and wife, which was January 23, 1904, by agreement between the parties, plaintiff constructed a fence around the north and east sides of the land, thus separating it from the remaining land belonging to Evey, but, owing to the topography at the north end of the strip, the fence was built on the land of Evey. It was also agreed that plaintiff might construct what is termed a "floodgate" across the stream bed, which served as a part of the fence, and which was suspended in the creek in such a way that, when there was a strong flow of water in the stream, the gate would open from the bottom, thus allowing the water and any floating debris to pass under the gate. This also was constructed outside the land purchased by plaintiff. After the purchase by plaintiff, he took possession of the land, including the fenced part, and including the floodgate, and has been in possession ever since. The deed from Evey to plaintiff describes the land by metes and bounds, and contains this provision: "And to have the right of way to put in and maintain floodgate on the north to the best of all concerned, and the fence to stand at present where it now is until otherwise provided for." On the 9th day of January, 1908, Evey sold and conveyed the remainder of his land to defendant, the land formerly conveyed to plaintiff being excluded from the terms of the deed, but no mention made of the reference to the floodgate and fence contained therein. The deed, however, refers to the book and page of the county deed records, wherein plaintiff's deed, containing the reference to

the floodgate and fence, is recorded. The facts above stated are, in the main, set out in the petition, and it is alleged that defendant "on October 7, 1911, wrongfully, wilfully, and unlawfully cut the wires, and was then and there attempting to destroy and demolish the fence around. the said tract, deeded plaintiff from Evey, together with said floodgate, that is next to the defendant's land that Evey deeded him as aforesaid; that defendant would not desist when forbidden to do so, and was only prevented from destroying and demolishing all of said fence and floodgate by means of physical force;" that he threatens to destroy and demolish said fence and floodgate as often as the same are erected and repaired, and will do so unless prevented by the process of the court. An injunction was prayed for. A restraining order was granted. The defendant answered by general denial of unadmitted facts, setting up his ownership of his real estate, alleging that plaintiff has unlawfully kept him out of possession of that portion not belonging to plaintiff, but within his inclosure, and retains the same, and the rents and profits thereof, to defendant's damage; prayer that plaintiff's action be dismissed, and for judgment of ouster against plaintiff, and for damages. Plaintiff replied in general denial. The cause was tried to the court, which resulted in a finding that the clause, referring to the fence and floodgate, "is a license merely, and not an easement;" that defendant is the owner of the land under the fence and not within the bounds of the plaintiff's deed, and entitled to the possession of the same. A decree was accordingly entered. Plaintiff appeals.

The quantity of land involved in this litigation is so very small we find it impossible to estimate the same. As compared with the half acre owned by plaintiff, it can amount to but few rods, if that much. The fence is situated upon the brow of the bluff or bank, which is from 20 to 30 feet high, and with practically a perpendicular face down to the creek, so that it is said to be impractical to construct a fence on the line without great expense, if at all, and it is claimed that the location of the floodgate is the only natural one that is at all suitable for its use. These rea-

sons are assigned for the permission to construct and maintain the fence and floodgate. It is clear to us that, in view of the contract between Evey and plaintiff, plaintiff was not a trespasser. When defendant purchased his land from Evey, he was charged with full notice of the contract between Evey and plaintiff, as recited in plaintiff's deed of record and referred to in defendant's deed. By this defendant was given full notice of the agreement at the time of his purchase, and he succeeded to no higher or greater rights than Evey would have had, had he retained his land. He bought with that contract in full force, and took his deed subject to it. So long as that contract remained in effect, plaintiff was entitled to the use and occupation of the soil upon which the fence stood, which was said to be, in most places, within six inches of the brow of the bluff. It is claimed that the recitals in the deed show affirmatively that the right to occupy the land upon which the fence and floodgate rested was only a temporary one, which might be terminated at any time. The right to terminate at a reasonable time and upon seasonable notice may be conceded, but that would not have authorized Evey, nor defendant, to destroy the improvements by force without reference to either. It is claimed by defendant, and so held by the trial court, that the right to occupy the ground in question is a mere license, terminable at any time by the licensor. Suppose this should be conceded, would it justify defendant in destroying the improvements without taking any steps to terminate the right? Is it to be the established law of this state that, if a fence or other improvement is supposed to encroach upon some right of the adjoining landowner, he may take the law into his own hands and destroy what may have been rightfully erected? We cannot give our consent to any such rule. If plaintiff's fence was subject to removal, the law would have furnished ample remedy. If not subject to removal by defendant, there is no excuse nor justification for a resort to force. But it is claimed by plaintiff that he has an easement in the land on which the fence stands, growing out of the recitals in his deed and his user of the right. This

may be true, perhaps is; at least we do not hold that he has no easement: But it must also be conceded that the permanent and perpetual right is not given. By the terms of the grant the right is limited to the pleasure of the parties. There seems to be no limitation as to time upon the right to maintain the floodgate. The only limitation is "to the best of all concerned;" which was settled by the parties to the contract at the time of its construction; but, as to the fence the limtation is: "To stand at present where it now is until otherwise provided for." This clearly implies a temporary right, not perpetual, and subject to termination, but not to destruction. If defendant has the right to terminate plaintiff's occupation of the land, the law furnishes him a complete and adequate remedy by reasonable and seasonable notice and procedure.

The decree of the district court is reversed and the cause remanded to that court, with directions to enter a decree enjoining defendant from destroying plaintiff's fence until such time as defendant may by peaceable and lawful means terminate the rights of the plaintiff.

REVERSED.

BARNES, ROSE and SEDGWICK, JJ., not sitting.